# In the United States Court of Federal Claims

## Nos. 16-865L, 16-893L
### Filed: July 26, 2018

```
*  *  *  *  *  *  *  *  *  *  *  *  *
                                        *
ANDREW S. LUCIER, et al.,               *
                                        *
THOMAS E. BEATTIE, et al.,              *
                                        *
                       Plaintiffs,      *     Motions for Reconsideration; Rails
                                        *     to Trails; Centerline Presumption.
v.                                      *
                                        *
UNITED STATES,                          *
                                        *
                       Defendant.       *
                                        *
*  *  *  *  *  *  *  *  *  *  *  *  *
```

# O R D E R

On July 3, 2018, plaintiffs in Andrew S. Lucier, et al. v. United States, No. 16-865L (Lucier),[1] and Thomas E. Beattie, et al.  v. United States, No. 16-893L (Beattie),[2] landowners in Thurston County, Washington, who allege that the United States government effected takings of their reversionary property interests through the operation of the National Trails System Act, 16 U.S.C. § 1241 et eq. (2012) (the Trails Act), both filed identical motions for reconsideration under Rule 59 (2018) of the Rules of the United States Court of Federal Claims (RCFC) of the court's June 1, 2018 Opinion granting defendant's motions for summary judgment in Lucier and Beattie and denying Lucier plaintiffs' and Beattie plaintiffs' motions for partial summary judgment. See Lucier v. United States, No. 16-865L, 2018 WL 2471404, at *39 (Fed. Cl. June 1, 2018). Subsequent to the court's June 1, 2018 Opinion, on June 5, 2018, the Clerk's Office entered judgment in favor of defendant in Lucier and Beattie.

In their motions for reconsideration, Lucier and Beattie plaintiffs argue:

Plaintiffs sought partial summary judgment in their original motion on two issues: 1) whether the railroad held an easement in the railroad corridor;

---

[1] The plaintiffs in Lucier are as follows: Andrew S. Lucier, Kris Allen O'Bannon, Jan Pettigrew, Scott L. and Susan K. Putzier, Keith D. Quentin, Kenneth T. and Shannon L. Kratina, Jon Sandberg, Robert M. and Kathleen L. Shaputis, and Skiview Estates Association.

[2] The plaintiffs in Beattie are as follows: Thomas E. Beattie, Clinton L. Termini, and Stephen Upton.

and 2) whether nature and hiking trail use exceeded the scope of such an easement. Defendant responded and filed a cross-motion on the additional issue of whether Plaintiffs possessed a cognizable property interest in the railroad right of way, an issue Plaintiffs believed was not suited for resolution by summary judgment but rather for trial.[3] The Court ultimately granted Defendant's cross-motion and denied Plaintiffs' cross-motion for partial summary judgment. Plaintiffs request reconsideration of the Court's June 1 Opinion and Order relating to the parties' motions for summary judgment in order to correct factual mistakes, correct errors of law, and avoid manifest injustice, and because extraordinary circumstances exist in this instance because the Court misinterpreted or missed vital evidence and disposed of Plaintiffs' claims, thus depriving them of due process and of their Constitutional right to be free of government intrusion on their private property or to be compensated for the intrusion.

Lucier and Beattie plaintiffs "do not ask the Court to reconsider whether judgment should be entered in favor of Plaintiffs on the ownership issue. Rather, Plaintiffs request the Court reverse its decision that Defendant is entitled to summary judgment on its cross-motion."

In its June 1, 2018 Opinion, the court analyzed the property interests of the twelve Lucier and Beattie plaintiffs, nine of which own land corresponding with tracts of land depicted on the plat map of Large Lot Subdivision 0146 (LLS-0146). The nine plaintiffs owning land corresponding with a tract of land depicted on the plat map of LLS-0146 are Lucier plaintiffs Andrew S. Lucier, Kris Allen O'Bannon, Kenneth T. and Shannon L. Kratina, Jon Sandberg, Scott and Susan Putzier, and Robert M. and Kathleen L. Shaputis and Beattie plaintiffs Thomas E. Beattie, Clinton L. Termini, and Stephen Upton. Id. at *31. The remaining three plaintiffs, Lucier plaintiffs Jan Pettigrew, Keith D. Quentin, and Skiview Estates Association, own property that does not correspond with a tract of land in LLS-0146. Id. at *35. The plat maps of the properties owned by Lucier plaintiffs Jan Pettigrew, Keith D. Quentin, and Skiview Estates Association, however, all contain language "excepting" the railroad corridor from the three plaintiffs' plat maps. Id.

Regarding the issue of the Lucier and Beattie plaintiffs' interest in the land underlying the railroad corridor, the court determined that, under Washington State law, the express metes and bounds and illustrations in the plat maps of the properties owned by the Lucier and Beattie plaintiffs rebutted the centerline presumption for all plaintiffs. Id. at *30-31. The court then determined that Lucier plaintiffs Andrew S. Lucier, Kris Allen O'Bannon, Kenneth T. and Shannon L. Kratina, Jon Sandberg, Scott and Susan Putzier, and Robert M. and Kathleen L. Shaputis and Beattie plaintiffs Thomas E. Beattie, Clinton L. Termini, and Stephen Upton, all of whom own property corresponding with tracts of land depicted on the plat map of LLS-0146, did not own the land underlying the railroad

---

[3] On December 6, 2017, Lucier and Beattie plaintiffs both cross-moved for partial summary judgment on the issue of Lucier plaintiffs' and Beattie plaintiffs' interest in the land underlying the railroad corridor, asserting that the all of the Lucier and Beattie plaintiffs owned the land underlying the railroad corridor in fee simple.

corridor, and the court granted defendant's motions for summary judgment against those nine plaintiffs. Id. at 35. The court explained:

> The plat map of LLS–0146, which consists of three sheets, on each of which is the phrase "BLACK LAKE ESTATES," was created in 1982 at the request of "TERRY ASBJORNSEN on FOR B.L. ESTATES, G.P." (capitalization in original). As discussed above, Black Lake Estates, G.P. subsequently conveyed title to land located in LLS–0146 to plaintiffs' predecessors-in-title. The legal description on the first sheet of the plat map of LLS–0146 states that that LLS–1046 extends "ALONG THE EAST LINE OF SAID SECTION 7. 1295.80 FEET, TO THE NORTHERLY LINE OF THE BURLINGTON NORTHERN R.R. RIGHT OF WAY: THENCE . . . ALONG SAID RIGHT OF WAY LINE . . . ." (capitalization in original). Subsequently in the legal description on the plat map of LLS–0146, the legal description states "AND THAT PORTION OF GOVERNMENT LOT 1, SECTION 8, T 17 N., R 2 W, W.M. LYING NORTHWESTERLY OF THE RIGHT OF WAY OF THE BURLINGTON NORTHERN R. R . . . ." All three sheets of the plat map of LLS–1046 uses metes and bounds that indicate the boundaries of properties adjacent to the railroad corridor end at the edge of the railroad corridor. The three sheets of the plat map of LLS–0146 also all contain illustrations that indicate the tracts of land on LLS–0146 end at the edge of the railroad corridor and indicate that the centerline of the railroad corridor is separate from the boundaries of the abutting properties in LLS–0146. On each of the three sheets of the plat map of LLS–0146, next to the illustration of the centerline of the railroad corridor, appear the words "NOT IN PLAT." The legal description of LLS–0146, metes and bounds in the plat maps of LLS–0146, the illustrations in the plat map of LLS–0146, and the phrase "NOT IN PLAT" in the plat map of LLS–0146 indicate that the railroad corridor is separate from the abutting properties in LLS–0146, and that the railroad corridor is not included in LLS–0146. The legal description on the plat map of LLS–1046 describes LLS–1046 as extending to the railroad corridor, states that LLS–0146 runs "ALONG" the railroad corridor, and states that LLS–1046 is "LYING NORTHWESTERLY" of the railroad corridor. The metes and bounds and illustrations are consistent with the legal description of LLS–1046 and indicate that the properties in LLS–0146 that abut the railroad corridor only extend up to the edge of the railroad corridor. The phrase "NOT IN PLAT" also indicates that the railroad corridor is not included in LLS–0146, which is consistent with the plain language and markings contained on the plat maps of LLS–1046. Additionally, the plat map of LLS–0146 illustrates the presence of other easements on LLS–0146, including a "DRAINAGE AND UNIMPROVED MUTUAL EASEMENT," a "B.P.A. EASEMENT," a "BONNEVILLE POWER ADM EASEMENT," several "DRAINAGE EASEMENT[S]," several "UNIMPROVED MUTUAL EASEMENT[S]," and several "PRIVATE EASEMENT ROAD[S]." Unlike the properties in LLS–0146 that abut the railroad corridor, the metes and bounds of properties on the plat map of

LLS–0146 extend into the easements on the plat map of LLS–0146. That the railroad corridor is not included in LLS–0146 is reinforced by the fact that the metes and bounds of properties in LLS–0146 extend into other easements on the LLS–0146 plat map, but the metes and bounds of the properties adjacent to the railroad corridor extend only up to the edge of the railroad corridor.

The plat maps of the referenced short subdivisions, which are referenced by the plaintiffs' individual deeds and correspond with tracts of land on LLS–0146, indicate that the plaintiffs do not own the land underlying the railroad corridor. None of the plaintiffs' deeds contain language which purports to convey the land underlying the railroad corridor, and the illustrations in the referenced short subdivisions are consistent with the illustrations on the sheets of the plat map of LLS–0146 and indicate that the referenced short subdivisions end at the edge of the railroad corridor. The plat map of SS–2411, which contains the parcels owned by <u>Lucier</u> plaintiff Andrew S. Lucier and <u>Beattie</u> plaintiff Stephen Upton, states in metes and bounds and has an illustration indicating that the edge of the properties in SS–2411 end at the edge of the railroad corridor. The plat map of SS–2411 also marks where the centerline of the railroad corridor is located and contains an arrow, above which is written "50'," pointing to the edge of the properties and the centerline of the railroad corridor. The plat map of SS–2066, which contains the parcels owned by <u>Lucier</u> plaintiff Kris Allen O'Bannon, Kenneth T. and Shannon L. Kratina, and Jon Sandberg, states in metes and bounds and has an illustration indicating that the edge of the properties in SS–2066 end at the edge of the railroad corridor. As with the plat map of SS–2411, the plat map of SS–2066 also marks where the centerline of the railroad corridor is located and contains an arrow, above which is written "50'," pointing to the edge of the properties and the centerline of the railroad corridor. Likewise, the plat map of SS–1966, which contains the parcel owned by <u>Lucier</u> plaintiff Robert M. and Kathleen Shaputis, the plat map of SS–1962, which contains the parcels owned by <u>Lucier</u> plaintiff Scott and Susan Putzier and <u>Beattie</u> plaintiff Clinton L. Termini, and the plat map of SS–2110, which contains the parcel owned by <u>Beattie</u> plaintiff Thomas E. Beattie, all contain metes and bounds and illustrations which indicate that the edge of the properties in the plat maps of SS–1966, SS–1962, and SS–2110 end at the edge of the railroad corridor. Each of the plat maps of the subdivisions referenced in the plaintiffs' deeds use metes and bounds that indicate the boundaries of the parcels in the subdivisions extend to the edge of the railroad corridor, which indicates the parties did not intend to convey an interest in the land underlying the railroad. <u>See</u> <u>Roeder Co. v. Burlington N., Inc.</u>, 716 P.2d [716 P.2d 855,] 862 [(Wash.), <u>recons. denied</u> (Wash. 1986)] ("A metes and bounds description in a deed to property that abuts a right of way is evidence of the grantor's intent to withhold any interest in the abutting right of way . . . ." (citations omitted)). While a metes and bounds description does not definitively establish intent, collectively, the plaintiffs' deeds, the

plat maps of the referenced short subdivisions, and the plat map of LLS–0146 demonstrate that <u>Lucier</u> plaintiffs Andrew S. Lucier, Kris Allen O'Bannon, Kenneth T. and Shannon L. Kratina, Jon Sandberg, Scott and Susan Putzier, and Robert M. and Kathleen L. Shaputis and <u>Beattie</u> plaintiffs Thomas E. Beattie, Clinton L. Termini, and Stephen Upton do not have an interest in the land underlying the railroad corridor.

Additionally, the chains of title offered by plaintiffs do not create a genuine issue of material fact. Nothing in the chains of title indicates that any of the nine aforementioned plaintiffs own the land underlying the railroad corridor. The deeds in the chains of title that post-date the creation of the plat map of LLS–0146 by Black Lake Estates, G.P. in 1982 for the nine plaintiffs owning land corresponding with tracts in LLS–1046 all describe the land being conveyed as either being in a short subdivision, the plat maps of which reference being located on LLS–0146. The post–1982 deeds in the chains of title for the nine plaintiffs do contain any language indicating that any of the plaintiffs own anything more than the properties described in the plat maps of the short subdivisions discussed above or LLS–0146, which, as stated above, do not include the land underlying the railroad corridor. The court, therefore, grants defendant's motion for summary judgment against <u>Lucier</u> plaintiffs Andrew S. Lucier, Kris Allen O'Bannon, Kenneth T. and Shannon L. Kratina, Jon Sandberg, Scott and Susan Putzier, and Robert M. and Kathleen L Shaputis and <u>Beattie</u> plaintiffs Thomas E. Beattie, Clinton L. Termini, and Stephen Upton.

<u>Id.</u> at *34-35.

Regarding <u>Lucier</u> plaintiffs Jan Pettigrew, Keith D. Quentin, and Skiview Estates Association, whose deeds referenced plat maps that contained language "excepting" the railroad corridor from the plat maps, the court granted defendant's motions for summary judgment against <u>Lucier</u> plaintiffs Jan Pettigrew, Keith D. Quentin, and Skiview Estates Association. <u>Id.</u> at *37-38. The court determined that, under Washington State law, the excepting language in the plat maps, the metes and bounds in the plat maps, and the illustrations in the plat maps indicated that <u>Lucier</u> plaintiffs Jan Pettigrew, Keith D. Quentin, and Skiview Estates Association do not own the land underlying the railroad corridor. <u>Id.</u>

In <u>Lucier</u> and <u>Beattie</u> plaintiffs' identical July 3, 2018 motions for reconsideration under RCFC 59, <u>Lucier</u> and <u>Beattie</u> plaintiffs argue that the court's "determination that nine plaintiffs who own parcels in Large Lot Subdivision 0146 do not own the land under the corridor is a clear mistake of fact," the court misapplied the centerline presumption, and noted <u>Sutton v. United States</u>, 107 Fed. Cl. 436 (2012), a rails-to-trail case arising under California law, as "virtually indistinguishable." According to plaintiffs, "the Court's striking of plaintiffs' extrinsic evidence of intent was based on a misinterpretation of the character and quality of the evidence presented," "the Court's determination that three plaintiffs who own parcels with 'excepting deeds' do not own the land under the corridor

is a clear error of law," "the Court erred by viewing the evidence in favor of defendant," and, "as an alternative, the Court should certify the interpretation of the centerline presumption to the Washington Supreme Court."

Reconsideration of a judgment is not intended to permit a party to retry its case when it previously was afforded a full and fair opportunity to do so. The United States Court of Appeals for the Federal Circuit has stated that "[t]he decision whether to grant reconsideration lies largely within the discretion of the [trial] court." Yuba Nat. Res., Inc. v. United States, 904 F.2d 1577, 1583 (Fed. Cir.), reh'g denied (Fed. Cir. 1990); see also Carter v. United States, 207 Ct. Cl. 316, 318, 518 F.2d 1199, 1199 (1975), cert. denied, 423 U.S. 1076, reh'g denied, 424 U.S. 950 (1976); CanPro Invs. Ltd. v. United States, 131 Fed. Cl. 528, 531 (2017); Osage Tribe of Indians of Okla. v. United States, 97 Fed. Cl. 345, 348 (2011) (discussing RCFC 59(a) and RCFC 60(b)); Oenga v. United States, 97 Fed. Cl. 80, 83 (2011) (discussing RCFC 59(a)); Webster v. United States, 92 Fed. Cl. 321, 324, recons. denied, 93 Fed. Cl. 676 (2010) (discussing RCFC 60(b)); Alpha I, L.P. ex rel. Sands v. United States, 86 Fed. Cl. 126, 129 (2009) (discussing RCFC 54(b) and 59(a)); Banks v. United States, 84 Fed. Cl. 288, 291-92 (2008) (discussing RCFC 54(b) and 59(a)); Corrigan v. United States, 70 Fed. Cl. 665, 667-68 (2006) (discussing RCFC 59(a)); Tritek Techs., Inc. v. United States, 63 Fed. Cl. 740, 752 (2005); Keeton Corr., Inc. v. United States, 60 Fed. Cl. 251, 253 (2004) (discussing RCFC 59(a)); Paalan v. United States, 58 Fed. Cl. 99, 105 (2003), aff'd, 120 F. App'x 817 (Fed. Cir.), cert. denied, 546 U.S. 844 (2005); Citizens Fed. Bank, FSB v. United States, 53 Fed. Cl. 793, 794 (2002) (discussing RCFC 59(a)).

"Motions for reconsideration must be supported 'by a showing of extraordinary circumstances which justify relief.'" Caldwell v. United States, 391 F.3d 1226, 1235 (Fed. Cir. 2004) (quoting Fru-Con Constr. Corp. v. United States, 44 Fed. Cl. 298, 300 (1999)) (discussing RCFC 59(a)), reh'g en banc denied (Fed. Cir.), cert. denied, 546 U.S. 826 (2005); see also Fiskars, Inc. v. Hunt Mfg. Co., 279 F.3d at 1382 ("Rule 60(b)(6) is available only in extraordinary circumstances and only when the basis for relief does not fall within any of the other subsections of Rule 60(b)." (citing Marquip, Inc. v. Fosber Am., Inc., 198 F.3d 1363, 1370 (Fed. Cir. 1999), reh'g denied (Fed. Cir. 2000)); Provident Sav. Bank v. Popovich, 71 F.3d 696, 700 (7th Cir. 1995)); Oenga v. United States, 97 Fed. Cl. at 83; Seldovia Native Ass'n Inc. v. United States, 36 Fed. Cl. 593, 594 (1996) (discussing RCFC 59(a)), aff'd, 144 F.3d 769 (Fed. Cir. 1998). Generally, "[t]he cases seem to make [a] fault/no fault distinction the controlling factor in determining whether extraordinary circumstances will be found or not. In a vast majority of cases finding that extraordinary circumstances do exist so as to justify relief, the movant is completely without fault . . . ." 12 Joseph T. McLaughlin and Thomas D. Rowe, Jr., Moore's Federal Practice § 60.48[3][b] (3rd ed. 2008) (discussing RCFC 60(b)(6)); see also Amado v. Microsoft Corp., 517 F.3d 1353, 1363 (2008) (citing Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd. P'ship, 507 U.S. 380, 393 (1993)) (discussing RCFC 60(b)(6)).

Courts must address reconsideration motions with "exceptional care." Carter v. United States, 207 Ct. Cl. at 318, 518 F.2d at 1199; see also Global Comput. Enters. v. United States, 88 Fed. Cl. 466, 468 (2009) (discussing RCFC 59(a)). "The three primary

grounds that justify reconsideration are: '(1) an intervening change in the controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or prevent manifest injustice.'" Del. Valley Floral Grp., Inc. v. Shaw Rose Nets, LLC, 597 F.3d 1374, 1383 (Fed. Cir. 2010); see also Griffin v. United States, 96 Fed. Cl. 1, 7 (2010) (discussing RCFC 59(a)), mot. to amend denied, appeal dismissed, 454 F. App'x 899 (Fed. Cir. 2011); Totolo/King Joint Venture v. United States, 89 Fed. Cl. 442, 444 (2009) (quoting Stockton E. Water Dist. v. United States, 76 Fed. Cl. 497, 499 (2007), aff'd in part, vacated in part, rev'd in part on other grounds, 583 F.3d 1344 (Fed. Cir. 2009)) (discussing RCFC 59(a)), appeal dismissed, 431 F. App'x 895 (Fed. Cir.), reh'g denied (2011); Dairyland Power Coop. v. United States, 90 Fed. Cl. 615, 652 (2009) (discussing RCFC 59(a)), recons. denied, No. 04-106C, 2010 WL 637793 (Fed. Cl. Feb. 22, 2010), aff'd in part, vacated in part on other grounds, 645 F.3d 1363 (Fed. Cir. June 24, 2011); Matthews v. United States, 73 Fed. Cl. 524, 526 (2006) (citations omitted) (discussing RCFC 59); Prati v. United States, 82 Fed. Cl. 373, 376 (2008) (discussing RCFC 59(a)), aff'd, 603 F.3d 1301 (Fed. Cir.), reh'g en banc denied (2010), cert. denied, 562 U.S. 1139 (2011); Tritek Techs., Inc. v. United States, 63 Fed. Cl. at 752; Bannum, Inc. v. United States, 59 Fed. Cl. 241, 243 (2003) (discussing RCFC 59(a)); Citizens Fed. Bank, FSB v. United States, 53 Fed. Cl. at 794; Strickland v. United States, 36 Fed. Cl. 651, 657 (discussing RCFC 59(a)), recons. denied (1996); Bishop v. United States, 26 Cl. Ct. 281, 286, recons. denied (1992) (discussing Rule 59 of the Rules of the United States Claims Court). "Manifest," as in "manifest injustice," is defined as "clearly apparent or obvious." Ammex, Inc. v. United States, 52 Fed. Cl. 555, 557 (2002) (discussing RCFC 59), aff'd, 384 F.3d 1368 (Fed. Cir. 2004), cert. denied, 544 U.S. 948 (2005). "Where a party seeks reconsideration on the ground of manifest injustice, it cannot prevail unless it demonstrates that any injustice is 'apparent to the point of being almost indisputable.'" Griffin v. United States, 96 Fed. Cl. at 7 (quoting Pac. Gas & Elec. Co. v. United States, 74 Fed. Cl. 779, 785 (2006), aff'd in part, rev'd in part on other grounds, 536 F.3d 1282 (Fed. Cir. 2008)). "A court, therefore, will not grant a motion for reconsideration if the movant 'merely reasserts . . . arguments previously made . . . all of which were carefully considered by the court.'" Ammex, Inc. v. United States, 52 Fed. Cl. at 557 (emphasis in original) (quoting Principal Mut. Life Ins. Co. v. United States, 29 Fed. Cl. 157, 164 (1993), aff'd, 50 F.3d 1021 (Fed. Cir.), reh'g denied, en banc suggestion declined (Fed. Cir. 1995)); see also CanPro Invs. Ltd. v. United States, 131 Fed. Cl. at 531; Griffin v. United States, 96 Fed. Cl. at 7; Bowling v. United States, 93 Fed. Cl. 551, 562 (discussing RCFC 59(a) and 60(b)), recons. denied (2010); Webster v. United States, 92 Fed. Cl. at 324 (discussing RCFC 59(a) and 60(b)); Pinckney v. United States, 90 Fed. Cl. 550, 555 (2009); Tritek Techs., Inc. v. United States, 63 Fed. Cl. at 752.

In sum, it is logical and well established that, "'[t]he litigation process rests on the assumption that both parties present their case once, to their best advantage;' a motion for reconsideration thus should not be based on evidence that was readily available at the time the motion was heard." Seldovia Native Ass'n Inc. v. United States, 36 Fed. Cl. at 594 (quoting Aerolease Long Beach v. United States, 31 Fed. Cl. 342, 376, aff'd, 39 F.3d 1198 (Fed. Cir. 1994) (table)). "Post-opinion motions to reconsider are not favored, especially 'where a party has had a fair opportunity to . . . litigate the point in issue.'" Aerolease Long Beach v. United States, 31 Fed. Cl. at 376 (quoting Prestex, Inc. v. United

<u>States</u>, 4 Cl. Ct. 317, 318, <u>aff'd</u>, 746 F.2d 1489 (Fed. Cir. 1984) (citing <u>Gen. Elec. Co. v. United States</u>, 189 Ct. Cl. 116, 117-18, 416 F.2d 1320, 1321 (1969))) (omission in original; other citation omitted).

<u>Lucier</u> and <u>Beattie</u> plaintiffs argue that the court erred in finding that <u>Lucier</u> plaintiffs Andrew S. Lucier, Kris Allen O'Bannon, Kenneth T. and Shannon L. Kratina, Jon Sandberg, Scott and Susan Putzier, and Robert M. and Kathleen L. Shaputis and <u>Beattie</u> plaintiffs Thomas E. Beattie, Clinton L. Termini, and Stephen Upton, all of whom own property corresponding with tracts of land depicted on the plat map of LLS-0146, did not own the land underlying the railroad corridor. <u>Lucier</u> and <u>Beattie</u> plaintiffs attempt to support their motions for reconsideration by arguing that, prior to the issuance of the court's June 1, 2018 Opinion, the "Plaintiffs presented to the Court a document that showed three principle facts necessary to the just determination of Plaintiffs' claims and the Defendant's cross-motion." According to <u>Lucier</u> and <u>Beattie</u> plaintiffs, the "three facts" are:

> 1. The express lines and words used on plat LLS-0146 should be read to ***include the entire abutting half corridor to its centerline*** and ***not exclude*** the BNSF railroad as the Court held in its Order.
>
> 2. A plat later in time covering a portion of the same property subdivided by LLS-0146 supports the necessary conclusion that the plat includes the right of way that ***includes*** the easement that the Court held is ***excluded.*** Plat SS-2411, a plat drawn out of parcel number 1 of LLS-0146 and later in time, depicts the right of way to its centerline and ***does not*** contain any express words of exclusion. So do the other plats further subdividing LLS-0146; and
>
> 3. The owner excluded another piece of land from LLS-0146. The manner in which this piece was excluded demonstrates how the owner who created the plat would have excluded the railroad right of way had it intended to do so. The owner excluded a parcel by designating it on the plat and stating, "EXCEPT THAT PART OF GOVERNMENT LOT 1 DESCRIBED AS FOLLOWS: BEGINNING AT A POINT 30.00 FEET SOUTH AND 30.00 FEET EAST OF THE N.W. CORNER OF SAID GOVERNMENT LOT 1: THENCE EAST 210.00 FEET. THENCE SOUTH 210.00 FEET. THENCE WEST 210.00 FEET: THENCE NORTH 210.00 FEET TO THE P.O.B." (Capitalization in original).

(emphasis in original). Regarding <u>Lucier</u> plaintiffs Jan Pettigrew, Keith D. Quentin, and Skiview Estates Association, whose deeds referenced plat maps that contained language "excepting" the railroad corridor from the plat maps, <u>Lucier</u> and <u>Beattie</u> plaintiffs argue that the court committed a "clear error of law" because plaintiffs "proved" that the grantors in the plaintiffs' chains of title did not convey the land underlying the railroad corridor and "an objective review of the record affirms plaintiffs' position with respect to these three Plaintiffs."

Lucier and Beattie plaintiffs also contend that "[c]ircumstantial evidence of the type provided by Dr. Kilpatrick," which plaintiffs acknowledge was struck by the court, "is sufficient to defeat a movant's motion for summary judgment," and that "the Defendant's cross motion for summary judgment should have been denied and the ownership issue should now be set for trial." Lucier and Beattie plaintiffs assert that "plaintiffs made clear on the record in response to the Court's question, and later in a filing requested by the Court, that there are no conveyances of any interest in the fee strips underlying the corridor other than those conveyances in the chains of title from one grantor to the other to each of the plaintiffs in this case." According to Lucier and Beattie plaintiffs, "[t]here is LLS-0146, but all the plat does is reinforce and repeat that at most the presumption is rebutted and give rise to ambiguity." Lucier and Beattie plaintiffs further assert that the court erred because the plat map of LLS-0146 "contains conflicting indications" and "these conflicting indications should have been resolved at summary judgment in favor of Plaintiffs." Lucier and Beattie plaintiffs argue that:

> The Court construed the various indications of LLS-0146 as evidencing an intention by the grantors to retain the fee interest in the railroad right of way. The various indications, which were subject to opposing constructions, should have been resolved in favor of Plaintiffs as the nonmoving party. The Defendant's interpretation of the phrase "B.N. R/W R.R. [centerline] (NOT IN PLAT)" was that the phrase is an unequivocal intention of the grantor's intention that the fee simple in the right of way was specifically intended to be retained by the grantors. As discussed *supra*, this phrase was subject to a completely valid and plausible interpretation opposite to the Defendant's.

Additionally, Lucier and Beattie plaintiffs assert that Sutton v. United States, a rails-to-trails case analyzed under California law, "and this case are on all fours," and that "[t]he Defendant lost in Sutton because it failed to come forth with any extrinsic evidence aside from the chains of title."

Lucier and Beattie plaintiffs, however, had already made the arguments discussed above to the court prior to its June 1, 2018 Opinion. The court did not find plaintiffs' arguments regarding LLS-0146 and the "excepting" language persuasive when analyzing whether the Lucier and Beattie plaintiffs owned the land underlying the railroad corridor, and in its June 1, 2018 Opinion, the court explained, at length, why the court concluded that the Lucier and Beattie plaintiffs did not own the land underlying the railroad corridor. See Lucier v. United States, 2018 WL 2471404, at *30-38. The court considered and disagreed with the Lucier and Beattie plaintiffs' position in their identical May 21, 2018 supplemental filings to this court that the record before the court, including the plat map of LLS-0146, which contained the words "NOT IN PLAT," "affirmatively demonstrates that the right of way, to the centerline, is included in plat LLS-0146, while the center line and beyond are excluded." The court also did not find conflicting persuasive indications, as asserted by plaintiffs, that indicated Lucier plaintiffs Andrew S. Lucier, Kris Allen O'Bannon, Kenneth T. and Shannon L. Kratina, Jon Sandberg, Scott and Susan Putzier, and Robert M. and Kathleen L Shaputis and Beattie plaintiffs Thomas E. Beattie, Clinton L. Termini, and Stephen Upton owned the land underlying the railroad corridor.

Regarding "plaintiffs' extrinsic evidence of intent," the court explained that plaintiffs' inability to offer transactions involving the land underlying the railroad corridor did not create a genuine issue of material fact because of "the plain, unambiguous language and markings in the plat maps of the referenced short subdivisions and LLS-0146, which indicate the railroad corridor was not included as part of the plaintiffs' properties," as well as the plain language and markings in the plat maps of the properties owned by Lucier plaintiffs Jan Pettigrew, Keith D. Quentin, and Skiview Estates Association. Id. at *35 n.25, *38 n.27. In its earlier Opinion, the court also reviewed Sutton v. United States and analyzed plaintiffs' argument that "'[t]he court in Sutton v. United States, granted summary judgment in Plaintiffs [sic] favor upon the same type and degree of evidence provided in this case where the government's defense was the same as it is here.'" See id. at *38. The court, however, found that, "unlike the decision in Sutton v. United States, the deeds and plat maps of all of the plaintiffs' properties demonstrate that, under Washington law, the parties did not intend to pass fee interest in the land underlying the railroad corridor to the plaintiffs." Id. at *39.

Lucier and Beattie plaintiffs have not demonstrated any extraordinary circumstances or manifest injustice justifying reconsideration of this court's June 1, 2018 Opinion. Rather, the plaintiffs have rehashed arguments previously made by plaintiffs and previously considered by this court. Such assertions are not sufficient to support plaintiffs' motions for reconsideration under RCFC 59. See Lee v. United States, 130 Fed. Cl. 243, 252 (2017) (analyzing a motion for reconsideration under RCFC 59 and stating "[i]t is not sufficient for plaintiffs to reassert the same arguments they made in earlier proceedings, nor can plaintiffs raise new arguments that could have been made earlier" (citation omitted)), aff'd, No. 2017-1643, 2018 WL 3404023 (Fed. Cir. July 13, 2018).

Lucier and Beattie plaintiffs further assert that, "[e]ven though the Court's interpretation of the rebuttal rule was correct – metes and bounds rebut the presumption – Plaintiffs disagree that the rule was correctly applied." The Lucier and Beattie plaintiffs argue that this court incorrectly viewed the plat maps of "LLS-0146 and the various short subdivision[s]" "as additional evidence of an intention by the grantors to retain unto themselves the fee interest in the railroad right of way." Lucier and Beattie plaintiffs argue "that the plats contain indications that the right of way borders Plaintiffs' properties adds nothing to the analysis" because "[i]t is not additional evidence, it does no more than repeat the principle." According to Lucier and Beattie plaintiffs:

> The error of the Court's application of the [centerline presumption] rule appears to flow at least in part from a flawed interpretation of the portion of the Roeder decision that dealt with the claims of the Davises. The Court correctly reports that the deed that applied to the Davises did not include a metes and bounds description, and only described the property as "lying Northerly of the right-of-way." Roeder, 716 P.2d at 862 n. 27; ECF No. 45 at p. 45. Thus, the centerline presumption was not rebutted, yet the court nonetheless held that the evidence supported an intent that the fee in the right of way was retained. But the court's conclusion was not based upon

> the language of the deed describing the property as lying north of the right
> of way. Rather, it was because the Davises' claim was defective at the
> outset – **they failed to provide their current ownership deed**, *i.e.*, they
> failed to provide any deed or evidence that they obtained their abutting
> property from the fee owner of the land underlying the railroad corridor. Id.
> at 862 (emphasis added).

(emphasis in original). The <u>Lucier</u> and <u>Beattie</u> plaintiffs note that they provided chains of
title to the court and assert that:

> Plaintiffs are therefore not in the same position as the Davises in <u>Roeder</u>,
> since Plaintiffs' claims did not have the deficiency, as the Davises failed to
> demonstrate they were entitled to the centerline presumption in the first
> instance. Again, **the Davises did not even present their ownership deed**.
> Accordingly, it was error for the Court to compare the Plaintiffs to the
> Davises, and consider the fact that the right of way was named or identified
> in the plats as a boundary as ***additional*** evidence of intent to retain the fee
> in the right of way.

(emphasis in original).

The court's June 1, 2018 Opinion explained that, in the cases before the court, the
"legal description of LLS–0146, metes and bounds in the plat maps of LLS–0146, the
illustrations in the plat map of LLS–0146, and the phrase 'NOT IN PLAT' in the plat map
of LLS–0146 indicate that the railroad corridor is separate from the abutting properties in
LLS–0146, and that the railroad corridor is not included in LLS–0146." Id. at *34. The
court also determined that:

> The plat maps of the referenced short subdivisions, which are referenced
> by the plaintiffs' individual deeds and correspond with tracts of land on LLS–
> 0146, indicate that the plaintiffs do not own the land underlying the railroad
> corridor. None of the plaintiffs' deeds contain language which purports to
> convey the land underlying the railroad corridor, and the illustrations in the
> referenced short subdivisions are consistent with the illustrations on the
> sheets of the plat map of LLS–0146 and indicate that the referenced short
> subdivisions end at the edge of the railroad corridor.

Id. The court did not incorrectly compare the <u>Lucier</u> and the <u>Beattie</u> plaintiffs to the
Davises in <u>Roeder</u>, but, rather, found that LLS-0146 indicated that plaintiffs did not own
the land underlying the railroad corridor, which was consistent with plaintiffs'
subsequently-created deeds and the subsequently-created plat maps of plaintiffs'
properties. Thus, the <u>Lucier</u> and <u>Beattie</u> plaintiffs' motions for reconsideration do not
establish that the court committed an error of law when applying the centerline
presumption, as plaintiffs contend.

Finally, <u>Lucier</u> and <u>Beattie</u> plaintiffs

respectfully suggest that as an option the Court hold its judgment in abeyance and allow Plaintiffs to seek certification of the [centerline presumption] issue before the Washington Supreme Court. In light of the Court's rulings thus far, Plaintiffs respectfully state that they have now decided they will seek such certification anyhow if this case proceeds to the appellate level, and so simply raise this as an option now for the Court's consideration.

Under Rule 16.16 of the Washington State Rules of Appellate Procedure, "[t]he Supreme Court [of Washington] may entertain a petition to determine a question of law certified to it under the Federal Court Local Law Certificate Procedure Act if the question of state law is one which has not been clearly determined and does not involve a question determined by reference to the United States Constitution." <u>See</u> Wash. R. App. P. 16.16 (2018). Under Washington State's Federal Court Local Law Certificate Procedure Act:

When in the opinion of any federal court before whom a proceeding is pending, it is necessary to ascertain the local law of this state in order to dispose of such proceeding and the local law has not been clearly determined, such federal court may certify to the supreme court [of Washington] for answer the question of local law involved and the supreme court shall render its opinion in answer thereto.

Wash. Rev. Code § 2.60.020 (2018). If <u>Lucier</u> and <u>Beattie</u> plaintiffs wanted to seek certification of a question regarding the centerline presumption under Washington State law to the Supreme Court of Washington, the plaintiffs could have requested such certification prior to the court's issuance of its June 1, 2018 Opinion and the entering of judgment in favor of defendant on June 5, 2018. The <u>Lucier</u> and <u>Beattie</u> plaintiffs, however, did not suggest that the application of the centerline presumption warranted certification to the Supreme Court of Washington and did not assert that the centerline presumption under Washington State law was unclear until after the court analyzed plaintiffs' arguments and granted summary judgment in favor of defendant. Moreover, the court does not believe that "the interpretation of the centerline presumption," or the interpretation of <u>Roeder Co. v. Burlington Northern, Inc.</u>, as explained and applied in the court's June 1, 2018 Opinion, is sufficiently unclear as to warrant certification to the Supreme Court of Washington. The court, therefore, declines to hold its judgment in abeyance or to seek certification of the centerline presumption issue before the Supreme Court of Washington.

**CONCLUSION**

For the foregoing reasons, the <u>Lucier</u> plaintiffs' motion for reconsideration is **DENIED**, and the <u>Beattie</u> plaintiffs' motion for reconsideration also is **DENIED**.

**IT IS SO ORDERED.**

<u>s/Marian Blank Horn</u>
**MARIAN BLANK HORN**
**Judge**